

## LEPISCOPO & ASSOCIATES

*SERVING SAN DIEGO & ORANGE COUNTIES*

 http://www.linkedin.com/in/petelepiscopo/
www.LepiscopoLawFirm.com

_____

**SAN DIEGO OFFICE**



1  Steven R. Young, Bar No. 96258
   William F. Zulch, Bar No. 94696
2  Law Offices of Steven R. Young, APLC
   Telephone: (714) 673-6500
3  Fax: (714) 545-0355
   E-mail: syoung@juryattorney.com
4  600 Anton Blvd., Suite 650, Costa Mesa, CA 92626 J.E.
   Attorneys for Plaintiffs C&H Family LLC,
5  Integra Capital Group, Inc., dba Century Business Solutions,
   a California Corporation; Calvin Lim, an individual; and
6  Helen Chu, an individual

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**05/24/2019 at 04:34:40 PM**

Clerk of the Superior Court
By Jessica Edwards, Deputy Clerk

8        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9             **FOR THE COUNTY OF ORANGE**

10

11  C&H Family LLC, formerly known as ABC )      Case No:30-2019-01072694-CU-BC-CJC
    Foundation Legacy, LLC, an Indiana    )                Judge David A. Hoffer
12  Limited Liability Company; Integra Capital )   **COMPLAINT FOR:**
    Group, Inc., dba Century Business       )
13  Solutions, a California Corporation; Calvin )  **(1) BREACH OF CONTRACT;**
    Lim, an individual; Helen Chu, an      )      **(2) BREACH OF CONTRACT;**
14  individual,                            )      **(3) BREACH OF CONTRACT;**
                                           )      **(4) PROFESSIONAL**
15                                         )          **NEGLIGENCE OF**
                                           )          **ATTORNEYS;**
16                                         )      **(5) PROFESSIONAL**
                  Plaintiffs,             )          **NEGLIGENCE OF**
17                                         )          **ACCOUNTANTS;**
                                           )      **(6) NEGLIGENT**
18            vs.                          )          **MISREPRESENTATION;**
                                           )      **(7) BREACH OF FIDUCIARY**
19  ALLEN, HAIGHT & MONAGHAN LLP,          )          **DUTY;**
    a California limited liability partnership; )  **(8) CONSTRUCTIVE FRAUD; and**
20  THOMAS MONAGHAN, CPA, an              )      **(9) VIOLATION OF BUSINESS &**
    individual; JEFFREY M. VERDON LAW     )          **PROFESSIONS CODE § 17200**
21  GROUP, LLP,  a California limited liability )
    partnership; JEFFREY M. VERDON, Esq., )
22  an individual; LINDZEY M. CAIN, Esq.,  )
    an individual; MICHAEL L. MEYER, Esq., )
23  an individual; INDIANA ENDOWMENT      )          **DEMAND FOR JURY TRIAL**
    FUND, INC., an Indiana Nonprofit       )
24  Corporation; and DOES 1 through 20,    )
    inclusive,                             )
25                                         )
                                           )
26                                         )
                  Defendants.             )
27

28

                              1
                         COMPLAINT

1    Plaintiffs C&H Family, LLC, ("C&H LLC") formerly known as ABC Foundation
2    Legacy, LLC, an Indiana Limited Liability Company, Integra Capital Group, Inc., dba
3    Century Business Solutions, a California Corporation ("Century"); Calvin Lim, an
4    individual ("Lim"); and Helen Chu, an individual ("Chu") (collectively, "Plaintiffs"),
5    allege as follows:
6
7    **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**
8    1.    Plaintiff C&H LLC, formerly known as ABC Foundation Legacy, LLC, is a
9    limited liability company organized under the State of Indiana with its principal place of
10   business in California.
11   2.    Plaintiff Century is a California S Corporation with its principal place of
12   business in Irvine, California.  Century is in the business of providing merchant credit card
13   processing services and support as well as software enhancements for processing of credit
14   card processing services. Century is a member of C&H LLC.
15   3.    Plaintiff Lim is an individual, shareholder, officer and employee of Century
16   and a managing member of C&H LLC, residing in Encinitas, California.
17   4.    Plaintiff Chu is an individual, shareholder, officer and employee of Century
18   and a managing member of C&H LLC, residing in Encinitas, California.
19   5.    Defendant Allen, Haight & Monaghan, LLP, ("AHM") is a California limited
20   liability partnership of Certified Public Accountants with its principal place of business in
21   Irvine, California.
22   6.    Defendant Thomas Monaghan, CPA ("Monaghan") is an individual
23   registered as a California Certified Public Accountant, license number 46355, whose
24   principal place of business is in Irvine, California.  Monaghan is a partner of AHM.
25   7.    Jeffrey M. Verdon Law Group, LLP, ("Verdon Law Group") is a California
26   limited liability partnership with its principal place of business in Newport Beach,
27   California.
28   8.    Jeffrey M. Verdon, Esq. ("Verdon"), is an individual attorney licensed in

1  California, State Bar Number 80780, with his principal place of business located in Irvine,
2  California.

3        9.     Lindzey M. Cain, Esq. ("Cain") formerly known as Lindzey M. Schindler, is
4  an individual attorney licensed in California, State Bar Number 295184, with her principal
5  place of business in Laguna Beach, California. Cain, during the relevant time period, was
6  an associate with the Verdon Law Group.

7        10.    Defendant Michael L. Meyer, Esq. ("Meyer") is an individual and allegedly
8  was an attorney at law licensed in Indiana and Kentucky. Meyer's principal place of
9  business is currently located in Southwest Ranches, Florida and formerly Davie, Florida.
10  Meyer regularly conducts business in and markets his charitable tax scheme to clients in
11  Orange County, California, including Plaintiffs herein.

12        11.    Defendant Indiana Endowment Fund, Inc., ("IEF") is an Indiana Nonprofit
13  Corporation under the direct or indirect control of Meyer and whose principal office was
14  located in Fort Branch, Indiana. On information and belief, Meyer worked with IEF to
15  regularly conduct business in Orange County and to market his charitable tax scheme to
16  other clients in Orange County, California.

17        12.    The true names and capacities, whether individual, corporate, associate, or
18  otherwise, of defendants named herein as Does 1 through 20, inclusive ("Doe
19  Defendants"), are unknown to Plaintiffs who therefore sue the Doe Defendants by such
20  fictitious names.  Plaintiffs will ask for leave of Court to amend this Complaint and insert
21  the true names and capacities of the Doe Defendants when they have been ascertained.
22  References to, and allegations concerning, the named defendants shall be deemed to
23  include like references to, and allegations concerning, the Doe Defendants. Plaintiffs are
24  informed and believe, and on that basis alleges, that each defendant, including each Doe
25  defendant, is responsible at least in part for the wrongful conduct alleged herein.

26        13.    At all relevant times, as alleged more fully herein, each Defendant acted as
27  an agent, servant, employee, co-conspirator, partner, alter-ego and/or joint venturer of each
28  of the other Defendants; the acts of each Defendant were within the scope of such agency,

1  service, employment, partnership, alter-ego and/or in furtherance of the joint venture; in
2  doing the acts or omissions alleged herein, each Defendant acted with the knowledge,
3  permission and/or consent of every other Defendant; and each Defendant aided and or
4  abetted the other Defendants in the acts and omissions alleged herein.
5          14.    Defendant Meyer was the alter ego of Defendant IEF, and there exists, and at
6  all times herein mentioned has existed, a unity of interest and ownership between these
7  Defendants such that any separateness between them has ceased to exist in that Defendant
8  Meyer completely controlled, dominated, managed, and operated Defendant IEF to suit his
9  convenience.  Defendant Meyer (1) controlled the business and affairs of IEF, including
10  any and all of their affiliates; (2) commingled the funds and assets of the corporate entities,
11  and diverted corporate funds and assets for his own personal use; (3) disregarded legal
12  formalities and failed to maintain arm's length relationships among the corporate entities;
13  (4) inadequately capitalized IEF; (5) used the same office or business location and
14  employed the same employees for all the corporate entities; (6) held himself out as
15  personally liable for the debts of the corporate entities; (7) used the corporate entities as
16  mere shells, instrumentalities or conduits for himself, his ex-spouse, relatives and/or his
17  individual businesses; (8) used the corporate entities to procure labor, services or
18  merchandise for another person or entities; (9) manipulated the assets and liabilities
19  between the corporate entities so as to concentrate the assets in one and the liabilities in
20  another; (10) used corporate entities to conceal their ownership, management and financial
21  interests and/or personal business activities; and/or (11) used the corporate entities to shield
22  against personal obligations, and in particular the obligations as alleged in this Complaint.
23  Defendant IEF was not only influenced and governed by Defendant Meyer, but there was
24  such a unity of interest and ownership that the individuality, or separateness, of Meyer and
25  IEF ceased, and that the facts are such that an adherence to the fiction of the separate
26  existence of these entities would, under the particular circumstances, sanction a fraud or
27  promote injustice.
28

4

COMPLAINT

15.     Most of the facts, acts, events, and circumstances herein alleged occurred in Orange County, California. Meyer marketed his services through CPAs and attorneys in Orange County, including through Defendants Monaghan, AHM, Verdon and Verdon Law Group, all of whom practice within Orange County.

16.     In or about January 2016, Plaintiff Century contacted the Verdon Law Group to set up a consultation.

17.     On or about January 21, 2016, Chu and Lim each received an Initial Welcoming Letter and related documents from the Verdon Law Group which, among other things, stated that "In choosing Mr. Verdon as your attorney, you are creating a relationship that we envision will last for the long haul; you are choosing a counselor who will craft a plan that is customized and comprehensive that your family must live with during extended period of time…".

18.     On or about February 3, 2016, Plaintiffs Century, Lim and Chu met with Verdon and the Verdon Law Group to discuss comprehensive business planning and legal services.  On the same day, Verdon sent an email recommending that Century, Lim and Chu switch to Monaghan and AHM as their CPA for tax planning and preparation.

19.     On or about February 4, 2016, Plaintiffs Century, Lim and Chu entered into an agreement for the Verdon Law Group and Verdon to provide comprehensive and optimal business planning, including tax planning, professionally competent legal services and other matters from time to time, and agreed to pay an initial retainer of $25,000. Plaintiffs Century, Lim and Chu considered themselves to be clients of Verdon Law Group and Verdon who also considered them to be clients. A copy of the legal services agreement is attached as Exhibit "1" and incorporated herein by reference.

20.     In February 2016 Verdon and his associate Cain began to review Century's business organization and internal records as well as the personal and individual tax records for Lim and Chu.

21.     On or about February 19, 2016, in reliance on Verdon's recommendation, Chu signed a Client Portal Agreement with AHM in order for AHM and Verdon to

1   perform a review of tax and related accounting documents for Century, Lim and Chu. A

2   copy of the Client Portal Agreement is attached as Exhibit "2" and incorporated by

3   reference.

4         22.     On or about December 19, 2016, Verdon, Cain, and Monaghan  attended a

5   meeting at Century's Irvine office to discuss end of year tax and business planning and

6   suggested to Century, Lim and Chu that they consider using the services of Meyer.

7         23.     On or about December 22, 2016, Verdon, Cain, Monaghan, Lim and Chu

8   attended another meeting at Century's Irvine Office to hear a presentation by Meyer.

9   Meyer, representing himself to be a CPA, MBA, JD and CVA, arranged for Mongahan to

10  distribute a PowerPoint presentation that was prepared by Meyer regarding his charitable

11  tax plan described as The Ultimate Plan: The Ultimate Tax, Estate and Charitable Giving

12  Plan.  Attendees were provided with Meyer's email address. During this meeting Meyer,

13  with the concurrence of Verdon and Monaghan, assured participants that his charitable tax

14  plan had economic substance and was compliant with Generally Accepted Accounting

15  Principles as well as the tax code and regulations. Meyer, Verdon and Monaghan

16  recommended to Century, Lim and Chu that they utilize Meyer's charitable tax plan in

17  coordination with their services, as part of their business and tax planning.

18        24.     Shortly after the December 22, 2016, meeting Cain prepared a series of five

19  promissory notes along with a note repayment schedule. The promissory notes were to be

20  donated to a Donor Advisor Fund. (She prepared them initially for the Donor Advisor Fund

21  named American Endowment Fund (the charity that was initially selected because there

22  was no fee and it would be a direct transfer), but Plaintiffs were later told that this would

23  not be an option). The names on the promissory notes were later changed (from AEF to

24  IEF) when the Donor Advisor Fund was changed from American Endowment Fund to

25  Indiana Endowment Fund (everything else was the same). Monaghan reviewed and

26  approved of the notes. The five signed promissory notes were sent to Meyer and he used an

27  existing LLC that he had already created in Indiana and changed the name and changed

28  membership to Lim and Chu (Meyer was previously the sole member). Meyer prepared the

1    Operating Agreement for the LLC with a signature page for Lim and Chu, applied for a
2    name change and updated the membership information and address. Later Monaghan/AHM
3    prepared the corporate and individual tax returns for Century, Lim and Chu (joint)
4    respectively and included a Form 8283 non cash charitable contribution explanation which
5    included an appraisal that was prepared by IEF. At that time, Plaintiffs did not know that
6    there was reason to question whether Indiana Endowment Fund was a legitimate Donor
7    Advisor Fund.

8         25.    In accordance with the recommendations of Meyer, Verdon and Monaghan,
9    Plaintiffs Century, Lim and Chu agreed to engage Meyer to prepare a charitable tax plan
10   (inclusive of The Ultimate Plan: The Ultimate Tax, Estate and Charitable Giving Plan), in
11   consultation and coordination with Verdon and Monaghan, for their benefit as the intended
12   beneficiaries. On December 22, 2016, Meyer and Lim and Chu entered into an Attorney
13   Engagement Agreement. A copy of the Agreement Engagement Agreement is attached as
14   Exhibit "3" and incorporated by reference.

15        26.    On or about July 11, 2017, in reliance on Verdon's recommendation,
16   Century, Lim and Chu entered into agreements with AHM. Monaghan to provide
17   competent tax planning and advice on income tax matters, tax preparation services and to
18   use their professional judgment in accordance with professional standards in compliance
19   with codes, regulations and interpretations. A copy of the agreement between AHM,
20   Monaghan and Century is attached as Exhibit "4" and incorporated by reference. A copy of
21   the agreement between AHM, Monaghan and Lim and Chu is attached as Exhibit "5" and
22   incorporated by reference.

23        27.    Unbeknownst to Plaintiffs at the time, Plaintiffs later learned through the
24   Meyer Case described below that Meyer's charitable tax plan that Plaintiffs implemented
25   through the coordinated efforts of Meyer, Verdon and Mongahan was part of a "bogus"
26   charitable giving tax scheme that Meyer organized, promoted and operated throughout the
27   United States. Through this scheme, Meyer creates an entity, in this case ABC Foundation
28   Legacy, LLC now named C&H Family, LLC. Meyer then advises the scheme participants

1   to transfer assets to the new entity. Meyer then causes the participants to purportedly
2   donate or assign an interest in these entities to charities that Meyer controls that were in
3   fact sham 501(c)(3) non profit organizations, including but not limited to, IEF. Meyer then
4   "appraises" the purportedly donated interests in a manner that fails to comply with the law
5   and generally accepted appraisal standards. Finally, according to the Meyer Case described
6   below, Meyer prepares federal income tax return documents to claim the "bogus"
7   charitable contribution deductions.

8       28.    Meyer was able to effectuate this nationwide scheme through the use of
9   CPAs, such as Monaghan, and attorneys in local areas, such as Verdon, who introduced
10  Meyer to their clients and vouched for the legitimacy of his products as well as his
11  professional competence.  In exchange for these introductions, Plaintiffs are informed and
12  believe and on that basis allege that Meyer provided undisclosed payments to this network
13  of CPAs and attorneys through improper use of IEF and other non-profit corporations that
14  he directly or indirectly created and controlled.

15      29.    On May 25, 2018, C&H Family received a third party subpoena ("Meyer
16  Subpoena") from the Tax Division of the United States Department of Justice in the matter
17  of United States v. Michael L. Meyer, 18-cv-60704 (S.D. Fla) ("Meyer Case").  The cover
18  letter for the Subpoena stated that a case had been filed against Meyer alleging that "Meyer
19  organizes, promotes, and operates a national charitable giving tax scheme by advising and
20  causing individuals to claim unwarranted charitable deductions for purported contributions
21  to one of three charities that Meyer controls."  The cover letter for the Subpoena also
22  provided a link to the First Amended Complaint in the Meyer Case.

23      30.    Prior to receiving the Subpoena, none of the Plaintiffs had reason to believe
24  and did not know that Meyer's charitable tax plan was "bogus" as more fully alleged in the
25  Meyer Case First Amended Complaint, that C&H Family was created for an improper
26  purpose or that anything was wrong with using a charitable LLC to claim charitable
27  deductions. Indeed, when Plaintiffs asked questions about this charitable tax plan from
28  Defendants Meyer, Verdon or Monaghan in December 2016 and March 2017, they were

1    assured by Defendants that it was proper and had economic substance. It was not until well

2    after receiving the Subpoena and investigating the claims made in the Meyer Case that

3    Plaintiffs had reason to suspect, or with reasonable diligence should have discovered,

4    wrongdoing or omissions in connection with the advice provided by Defendants for the

5    charitable tax plan.

6

7                              **FIRST CAUSE OF ACTION**

8    **Breach of Contract Against Verdon, Verdon Law Group and Doe Defendants**

9

10        31.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations

11   set forth in Paragraphs 1 through 30 above.

12        32.     Plaintiffs entered into a written contract or were intended beneficiaries of the

13   written contract with the Verdon Law Group and Verdon under which Verdon Law Group

14   and Verdon agreed to provide them with comprehensive and optimal business planning,

15   including tax planning, professionally competent legal services and other matters from time

16   to time.

17        33.     Plaintiffs did all, or substantially all, of the significant things that the

18   agreement required them to do.

19        34.     Verdon Law Group, Verdon and the Doe Defendants breached the agreement

20   in several ways, including, for example, by failing to render comprehensive and optimal

21   business and tax planning to Plaintiffs and by failing to render proper, adequate and

22   competent legal advice to Plaintiffs concerning (a) the background and credentials of

23   Meyer and (b) the serious consequences of entering into Meyer's charitable tax plan

24   described above which the Verdon Law Group, Verdon and the Doe Defendants knew or

25   reasonably should have known was "bogus" for reasons alleged in the Meyer Case or

26   which Verdon Law Group or Verdon knew or reasonably should have known would not

27   result in qualified charitable tax deductions or otherwise would be not be in accordance

28   with the Internal Revenue Code and other applicable law or regulation causing all Plaintiffs

1   harm in excess of a million dollars.

2        35.    Defendants' breach of contract was a substantial factor in causing Plaintiffs'

3   harm.

4                           **SECOND CAUSE OF ACTION**

5                               **Breach of Contract**

6                 **(Against AHM, Monaghan and the Doe Defendants)**

7        36.    Plaintiffs incorporate by reference as if fully set forth herein, the allegations

8   set forth in Paragraphs 1 through 30 above.

9        37.    Plaintiffs entered into a written contract or were intended beneficiaries of the

10   written contract with the AHM, Monaghan under which AHM, and Monaghan agreed to

11   provide them with competent tax planning and advice on income tax matters, tax

12   preparation services and to use their professional judgment in accordance with professional

13   standards in compliance with codes, regulations and interpretations.

14       38.    Plaintiffs did all, or substantially all, of the significant things that the contract

15   required them to do.

16       39.    AHM, Monaghan and the Doe Defendants breached the contract in several

17   ways, including, for example, by failing to render comprehensive and optimal business and

18   tax planning to Plaintiffs and by failing to render proper, adequate and competent tax

19   planning, advice on income tax matters, tax preparation services and professional

20   judgement to Plaintiffs concerning (a) the background and credentials of Meyer and (b) the

21   serious consequences of entering into Meyer's charitable tax plan described above which

22   they knew or reasonably should have known was "bogus" for reasons alleged in the Meyer

23   Case or which AHM, Monaghan and the Doe Defendants knew or reasonably should have

24   known would not result in qualified charitable tax deductions or otherwise would be not be

25   in accordance with the Internal Revenue Code and other applicable law or regulation, all

26   causing Plaintiffs harm in excess of a million dollars.

27       40.    Defendants' breach of contract was a substantial factor in causing Plaintiffs'

28   harm.

## THIRD CAUSE OF ACTION

### Breach of Contract

### (Against Meyer and the Doe Defendants)

41.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations set forth in Paragraphs 1 through 30 above.

42.     Plaintiffs entered into a written contract or were intended beneficiaries of the written contract with Meyer under which Meyer agreed to provide them with a charitable tax plan (inclusive of The Ultimate Plan: The Ultimate Tax, Estate and Charitable Giving Plan), in consultation and coordination with Verdon and Monaghan, for their benefit as the intended beneficiaries.

43.     Plaintiffs did all, or substantially all, of the significant things that the contract required them to do.

44.     Meyer and the Doe Defendants breached the contract in several ways, including, for example, by misrepresenting his credentials and by failing to provide them with a proper and qualified charitable tax plan inclusive of The Ultimate Plan: the Ultimate Tax, Estate and Charitable Giving Plan. Instead, Meyer knew that what he provided to Plaintiffs was "bogus" for reasons such as those alleged in the Meyer Case and he knew that his tax plan did not provide for qualified charitable tax deductions or otherwise be in accordance with the Internal Revenue Code and other applicable law or regulation, all causing Plaintiffs harm in excess of a million dollars.

45.     Defendants' breach of contract was a substantial factor in causing Plaintiffs' harm.

//

1

## FOURTH CAUSE OF ACTION

### Professional Negligence of Attorneys

### (Against Verdon Law Group, Verdon, Cain, Meyer and the Doe Defendants)

46.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations set forth in Paragraphs 1 through 45 above.

47.     At all times relevant, Verdon Law Group, Verdon, Cain, Meyer and the Doe Defendants held themselves out to Plaintiffs as possessing special knowledge and expertise with respect to comprehensive and optimal business planning, including tax planning, and providing professionally competent legal services and with respect to the development, coordination and implementation of Meyer's purported charitable tax plan and other legal, tax or business matters.

48.     Verdon Law Group, Verdon, Cain, Meyer and the Doe Defendants negligently failed to use the skill and care that a reasonably careful attorney or financial advisor would have used in similar circumstances.

49.     Plaintiffs would have obtained a better result if Verdon Law Group, Verdon, Cain, Meyer and the Doe Defendants had acted as a reasonably careful attorney.

50.     Defendants' breaches of their legal and ethical duties to Plaintiffs were a substantial factor in causing losses to Plaintiffs in excess of a million dollars.

## FIFTH CAUSE OF ACTION

### Professional Negligence of Certified Public Accountants

### (Against AHM, Monaghan and the Doe Defendants)

51.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations set forth in Paragraphs 1 through 45  above.

52.     At all times relevant, AHM, Monaghan and the Doe Defendants held themselves out to Plaintiffs as possessing special knowledge and expertise with respect to comprehensive and optimal business planning, including tax planning, and providing

COMPLAINT

1 | professionally competent accounting or financial advice services and with respect to the

2 | development, coordination and implementation of Meyer's purported charitable tax plan

3 | and other accounting, tax or business matters.

4 |      53.     AHM, Monaghan and the Doe Defendants negligently failed to use the skill

5 | and care that a reasonably careful accountant or financial advisor would have used in

6 | similar circumstances.

7 |      54.     Plaintiffs would have obtained a better result if Verdon Law Group, Verdon,

8 | Cain, Meyer and the Doe Defendants had acted as a reasonably careful accountant or

9 | financial advisor.

10 |      55.     Defendants' breaches of their legal and ethical duties to Plaintiffs were a

11 | substantial factor in causing losses to Plaintiffs in excess of a million dollars.

12 | **SIXTH CAUSE OF ACTION**

13 | **Negligent Misrepresentation**

14 | **(Against All Defendants)**

15 |      56.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations

16 | set forth in Paragraphs 1 through 55 above.

17 |      57.     Plaintiffs were harmed because Defendants AHM, Monaghan, Verdon Law

18 | Group, Verdon, Cain, Meyer, IEF and the Doe Defendants negligently misrepresented that

19 | a fact or facts was true to Plaintiffs.

20 |      58.     Defendants AHM, Monaghan, Verdon Law Group, Verdon, Cain, Meyer,

21 | IEF and the Doe Defendants representation was not true.

22 |      59.     That although Defendants AHM, Monaghan, Verdon Law Group, Verdon,

23 | Cain, Meyer, IEF and the Doe Defendants may have honestly believed that the

24 | representation was true, Defendants AHM, Monaghan, Verdon Law Group, Verdon, Cain,

25 | Meyer, IEF and the Doe Defendants had no reasonable grounds for believing the

26 | representation was true when they made it.

27 |      60. Defendants AHM, Monaghan, Verdon Law Group, Verdon, Cain, Meyer, IEF

28 | and the Doe Defendants intended that Plaintiffs rely on this representation;

1    61. Plaintiffs reasonably relied on Defendants AHM, Monaghan, Verdon Law

2  Group, Verdon, Cain, Meyer, IEF and the Doe Defendants' representation;

3    62. Plaintiffs were harmed by Defendants' negligent representations.

4    63. Plaintiffs' reliance on Defendants' representation was a substantial factor in

5  causing Plaintiffs' harm.

6    <u>**SEVENTH CAUSE OF ACTION**</u>

7    **Breach of Fiduciary Duty**

8    **(Against All Defendants)**

9    64.    Plaintiffs incorporate by reference as if fully set forth herein, the allegations

10  set forth in Paragraphs 1 through 63 above.

11    65.    As counsel, accountants or financial advisors for Plaintiffs, Defendants owed

12  a fiduciary duty which includes, but is not limited to:

13         a.  The duty to act with absolute honesty and forthrightness both in

14             relation to Defendants' capabilities and abilities, as well as in

15             connection with the subject matter of the representation as pled

16             above;

17         b.  The duty to protect Plaintiffs in every possible way and to not

18             assume a position averse or antagonistic to Plaintiffs without

19             Plaintiffs' free and intelligent consent given after full knowledge

20             of all the facts and circumstances;

21         c.  The duty not to act as, or on account of, an averse party without

22             Plaintiffs' consent;

23         d.  A duty to withdraw from any relationship giving rise to a conflict

24             with Plaintiffs' best interests;

25         e.  The duty to use the higher degree of care, diligence, and skill of an

26             attorney, accountant or financial advisor;

27         f.  The duty to account for profits arising out of the employment;

28

14

COMPLAINT

g.  The duty to account to Plaintiffs for secret profits, kickbacks, and proceeds or benefits from referrals;

h.  The duty to deal fairly with Plaintiffs in all transactions and contracts or agreements with them;

i.  The duty not to compete or self-deal as to Plaintiffs on matters connected with the agency, unless Plaintiffs first agreed otherwise;

j.  The duty to prove that Defendants acted with the utmost good faith towards Plaintiffs and that Defendants so acted before any change in the relationship, defendants fully disclosed all facts relating to the transaction;

k.  The duty of diligent and faithful service;

l.  The duty of full disclosure to keep Plaintiffs fully informed of Defendants' acts in the course of the agency;

m.  After termination of the agency relationship, the duty not to take advantage of a still subsisting confidential relationship created during the prior agency relationship.

66.   Defendants intentionally induced Plaintiffs to rely on Defendants and to extend to Defendants their trust and confidence. Defendants accomplished this by regularly meeting with or communicating with Plaintiffs and to answer their questions and provide advice to Plaintiffs.

67.   Defendants breached their fiduciary duty to Plaintiffs by, but not limited to:

a.  Failing to act with absolute honesty and forthrightness both in relation to Defendants' capabilities and abilities, as well as in connection with the subject matter of the representation as pled above;

b.  Failing to protect Plaintiffs in every possible way and to not assume a position averse or antagonistic to Plaintiffs without Plaintiffs' free and

1   intelligent consent given after full knowledge of all the facts and
2   circumstances;

c.   Acting on behalf of an adverse party without Plaintiffs' consent;

d.   Failing to withdraw from any relationship giving rise to a conflict with
    Plaintiffs' best interests;

e.   Failing to use the higher degree of care, diligence, and skill of an
    attorney, accountant or financial advisor;

f.   Failing to account for profits arising out of the employment;

g.   Failing to account to Plaintiffs for secret profits, kickbacks, and proceeds
    or benefits from referrals;

i.   Failing to deal fairly with Plaintiffs in all transactions and contracts or
    agreements with them;

j.   Competing or self-dealing as to Plaintiffs on matters connected with the
    agency, unless Plaintiffs first agreed otherwise;

k.   Failing to prove that Defendants acted with the utmost good faith towards
    Plaintiffs before any change in the relationship,

l.   Failing to fully disclose all facts relating to the transaction and to failing
    to keep Plaintiffs fully informed of Defendants' acts in the course of the
    agency;

m.   After termination of the agency relationship, taking advantage of a still
    subsisting confidential relationship created during the prior agency
    relationship.

n.   Failing to obtain the optimal and best qualified charitable deductions for
    Plaintiffs and not to mislead Plaintiffs concerning charitable deductions,
    business planning and tax planning.

68.   Defendants' conduct was a substantial factor in causing Plaintiffs' harm in excess of a million dollars.

1      69.    Defendants' wrongful conduct was fraudulent, willful, malicious and

2  oppressive, entitling Plaintiffs to an award of punitive damages.

3

4                       **EIGHTH CAUSE OF ACTION**

5                          **Constructive Fraud**

6                     **(Against All Defendants**)

7      70.    Plaintiffs incorporate by reference as if fully set forth herein, the allegations

8  set forth in Paragraphs 1through 69 above.

9      71.    Plaintiffs were harmed because Defendants misled Plaintiffs by failing to

10  provide Plaintiffs with complete and accurate information as their attorney, accountant or

11  financial advisor.

12      72.    Defendants acted on Plaintiffs' behalf for purposes of coordinating and

13  implementing Meyer's charitable tax plan as alleged above.

14      73.    Defendants knew, or should have known, that Meyer did not have the

15  background and credentials he stated and that the information provided regarding Meyer's

16  charitable tax plan was not complete and accurate as alleged in the Meyer's Case and

17  otherwise.

18      74.    Defendants misled Plaintiffs by failing to disclose complete and accurate

19  information about Meyer's charitable tax plan and by providing Plaintiffs with information

20  that was inaccurate or incomplete as alleged in the Meyer's Case and otherwise.

21      75.    Plaintiffs were harmed.

22      76.    Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

23      77.    Defendants' wrongful conduct was fraudulent, willful, malicious and

24  oppressive, entitling Plaintiffs to an award of punitive damages.

25

26

27

28      //

COMPLAINT

## NINTH CAUSE OF ACTION

### Violation of Business and Professions Code § 17200

### (Against Verdon Law Group, Verdon, AHS, Monaghan,

### Meyer and the Doe Defendants)

78.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations set forth in Paragraphs 1 through 77 above.

79.     Defendants Verdon Law Group, Verdon, AHS, Monaghan, Meyer and the Doe Defendants committed acts of unfair competition, as defined by Business and Professions Code § 17200, by engaging in the acts and practices alleged above.

80.     These acts and practices described above violate Business & Professions Code section § 17200 in the following respects:

       a.  Defendants' acts, policies and practices violate those laws specified in the Meyer Case and, consequently, constitutes an unlawful business act of practice within the meaning of Business and Professions Code § 17200.

       b.  Defendants' acts, policies and practices described above are likely to mislead the general public and, consequently, constitutes a fraudulent or unfair business act or practice within the meaning of Business and Professions Code § 17200.

81.     Plaintiffs have no other adequate remedy of law.

82.     By reason of the foregoing, Plaintiffs have suffered and continue to suffer harm.

83.     The Court should award restitution and injunctive relief as appropriate and such other relief including punitive damages as may be appropriate.

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants, and each of them, as follows:

1.  Compensatory, general and special damages according to proof;

2.  Punitive and exemplary damages;

3.  For interest according to Civil Code § 3288;

4   For Plaintiffs' attorneys fees;

5.  For Plaintiffs' costs;

6   For treble damages under Penal Code § 496(a);

7.  For restitution and injunctive relief;

8.  For such other and further relief as the court deems just and proper.

Dated: May 24 , 2019                LAW OFFICES OF STEVEN R. YOUNG

By: _____

William F. Zulch
Steven R. Young
Attorneys for Plaintiffs C&H Family LLC, Integra
Capital Group, Inc., dba Century Business Solutions, a
California Corporation; Calvin Lim, an individual; and
Helen Chu, an individual

# EXHIBIT 1

JEFFREY M. VERDON
LAW GROUP, LLP

1201 Dove Street, Suite 400 • Newport Beach, CA 92660
ph: 949.263.1133 • fx: 949.263.1333
February 4, 2016

**Personal and Confidential**
**Attorney-Client Privileged**

Calvin Lim, Vice President                         Via Email:  clim@centurybizsolutions.com
Integra Capital Group, Inc.
dba Century Business Solutions
20 Pacifica, Suite 1450
Irvine, CA  92618

      Re:    Legal Services Agreement

Dear Calvin:

SUMMARY OF LEGAL SERVICES

     We are pleased that you have selected my law firm to perform certain Comprehensive Business Planning services for you.  This **SUMMARY** is intended to set forth our understanding as to the nature and scope of the legal services we have agreed to render for you, the manner in which our fees for these services shall be determined, and the terms upon which you will make payment of our fees and costs.

     The accompanying **SUPPLEMENT to SUMMARY OF LEGAL SERVICES** contains the written contract that California law requires lawyers to have with their clients.

     A.    **Nature and Scope of Legal Services:**  You have engaged us to perform certain Comprehensive Business Planning.  These services will be performed as follows:

     Business and Tax Planning, including but not limited to:  review business organization structure for optimal business planning, tax planning and asset protection, employment agreements, qualified and non-qualified retirement planning, including but not limited to the Private Retirement Plan, captive insurance under IRC 831(b), life insurance planning and other matters within our expertise from time to time.

     B.    **Fees for Services:**  Legal services will be charged on an hourly basis at the rates on Schedule A attached, and those rates shall change from time to time.

     C.    **Terms of Payment**:  Prior to commencement of work, the firm requires an initial retainer fee of $25,000.00.  This sum will be held in our client trust account and be used as a debit account against the time incurred during the course of work above.  You will receive an invoice from the firm approximately once each month with the time and charges. Any out-of-

<u>Personal & Confidential</u>
Calvin Lim, Vice President
Integra Capital Group, Inc.
dba Century Business Solutions
Page 2
February 4, 2016

pocket costs or fees incurred as additional charges will be billed to you on a monthly basis and the retainer balance will be replenished upon receipt of your payment. You agree to pay each bill within ten (10) days from receipt, unless we agree to a different arrangement. In the event of the nonpayment of any invoice rendered by us pursuant to the terms of this letter, we may, at our discretion, cease to provide legal services to you; you will, however, be liable to us for the payment of fees earned and costs incurred by us up to that time.

   

<u>Credit Card Payments</u>.

We accept credit card payments for 103% of the amount you are charging (3% covers the card company's fee) Due: <u>**$25,000.00  (3% is waived)**</u>
Please print card name and number _____ ;
Three digit CV on the back _____; expiration date _____ ;
and the cardholder's name _____ .
If the address at the beginning of this document is not the billing address, indicate the billing address here: _____ .

<u>Wire Instructions</u>:

Please send payment in the amount of $25,000.00 by wire transfer as follows:

|  |  |
|---|---|
| Beneficiary Bank: | City National Bank |
|  | 400 N. Roxbury Drive |
|  | Beverly Hills, CA  90210 |
|  |  |
| ABA Number: | 122016066 |
| Credit to: | 127021074 |
|  | **International** |
| Swift Code: | CINAUS6L |
| Credit to: | 127021074 |
|  |  |
| Beneficiary: | Jeffrey M. Verdon Law Group, LLP - CTA |
|  | 1201 Dove Street, Suite 400 |
|  | Newport Beach, CA  92660 |

**Personal & Confidential**
Calvin Lim, Vice President
Integra Capital Group, Inc.
dba Century Business Solutions
Page 3
February 4, 2016

_____

**Checks:**
Please make your check payable to Jeffrey M. Verdon Law Group, LLP CTA in the amount of
$25,000.00, using our FedEx account number 147693850, and send to:

> Jeffrey M. Verdon Law Group, LLP
> c/o Susan P. Jerome
> 1201 Dove Street, Suite 400
> Newport Beach, CA 92660

     **D.**    **Termination of Services:**  YOU HAVE THE RIGHT TO TERMINATE OUR
SERVICES AT ANY TIME; HOWEVER, YOU WILL REMAIN LIABLE FOR ALL
AMOUNTS DUE AND OWING TO OUR FIRM WITH RESPECT TO THE COMPLETED
PHASES, NOTWITHSTANDING ANY SUCH TERMINATION.  WE ALSO HAVE THE
SAME RIGHT, SUBJECT TO OUR OBLIGATION TO GIVE YOU REASONABLE NOTICE
TO ARRANGE ALTERNATIVE REPRESENTATION. SHOULD YOU TERMINATE OUR
SERVICES PRIOR TO THE COMPLETION AND/OR EXECUTION OF THE DOCUMENTS
WHICH ARE THE SUBJECT OF THIS AGREEMENT, THE UNEARNED PORTION OF
THE RETAINER TO BE REFUNDED WILL BE BASED ON THE PORTION OF THE
WORK YET TO BE PERFORMED UNDER A ABOVE.

     **E.**    **Commencement of Representation:**  If the foregoing statement of our
engagement and the manner and terms of payment meet with your approval, please arrange for
payment and sign. date and return the original of this letter to:

> Jeffrey M. Verdon Law Group, LLP
> c/o Susan P. Jerome
> 1201 Dove Street, Suite 400
> Newport Beach, CA 92660
> Fax: 949-258-5805

     By your signature hereon you agree that this letter constitutes a satisfactory fee arrangement
and that you wish us to proceed with the work described above.  A copy is provided for your
convenience.  Upon receipt of the executed Legal Services Agreement and your retainer, I shall
promptly forward requisite material for your immediate attention.

> Sincerely,
> JEFFREY M. VERDON LAW GROUP, LLP
>
> JEFFREY M. VERDON, ESQ.

**Personal & Confidential**
Calvin Lim, Vice President
Integra Capital Group, Inc.
dba Century Business Solutions
Page 4
February 4, 2016

_____

**AGREEMENT AND ACCEPTANCE**:

      The undersigned hereby agrees to and accepts all of the terms and provisions contained within this Legal Services Agreement.

*date filled in*
*vip/fox*

Dated this __4th__ day of __February__, 2016.

_____

Calvin Lim, Vice President

<u>Personal & Confidential</u>
Calvin Lim, Vice President
Integra Capital Group, Inc.
dba Century Business Solutions
Page 5
February 4, 2016

---

## SUPPLEMENT to LEGAL SERVICES AGREEMENT

<u>Initially, we wish to confirm with you that any conveyances which may be involved must not involve transfers which are fraudulent as to creditors.</u>  Part of this analysis dictates that conveyances must not be made to the extent that you are thereby rendered insolvent, with due consideration being given to contingent liabilities and like factors.  By signing this letter, you are confirming that you are not contemplating filing for relief under applicable provisions of the U.S. Bankruptcy Code, that you do not believe any such filing to be likely in the reasonably foreseeable future, and that all current and reasonably anticipated federal taxes have been paid or provided for, or will be paid or provided for, in a timely manner.

During the course of our working together, it will be extremely important for you to make full disclosure to us of all relevant financial information.  This includes, without limitation, the pendency of any legal claim or liability.  Our recommendations are based on our assumption that you have *fully* disclosed to us all your relevant financial information.  To the extent that you withhold relevant information, fail to inform us of material changes to your financial situation, or make changes to your planning structures subsequent to our original implementation, you should not rely on our planning structures to provide their intended results.  As such, we strongly encourage you to visit us annually (or more frequently, as circumstances dictate) to discuss your current situation, so that we may advise you of any changes that may be necessary to your planning from time to time.  By signing below, you acknowledge this obligation to disclose may result in our resignation as counsel, either during the course of our current services or at such a time in the future as relevant information may become known to us.

It should be noted that the law firm will represent only you, and such representation does not extend to any other person or entity, including your spouse, unless included as a party to this agreement accompanied by a Conflict Waiver.

1.      <u>Your Role as Client</u>:  You understand the importance of giving us all the facts and being totally honest with us.  We can only do our best job if we have your trust and are fully informed.  To enable us to perform these services, you must (a) complete our firm's Estate Planning Questionnaire, (b) authorize our firm to obtain any information necessary to evaluate your current legal claim status and, therefore, our ability to perform the contemplated planning without violating any applicable Fraudulent Transfer laws, and (c) deliver to us all requested documentation, including your existing Wills and Trust documents.

To assist in the evaluation of your planning objectives and to complete them in a timely manner, we will, of course, expect your full cooperation with our office in providing us with

**Personal & Confidential**
Calvin Lim, Vice President
Integra Capital Group, Inc.
dba Century Business Solutions
Page 6
February 4, 2016

---

requested documents and information, keeping us apprised of any changes in facts and circumstances that affect your planning and the payment of our statements in a timely manner.

      2.    <u>**Fees, Costs, and Additional Charges:**</u>  In the course of our relationship, we will incur certain out of pocket costs and expenses associated with the services we perform for you. Many of the charges we incur are not passed along. However, from time to time, we may incur certain charges necessary in our providing you our services that will be billed to you, such as filing fees, certain postage, extraordinary photocopying, delivery services, computerized legal research, staff overtime (when approved by you) and similar items.  In order to allocate these expenses fairly and keep our billing rates stable, these items are charged to each client for whose benefit they are incurred.  Therefore, in addition to the legal fees described above, you will be responsible, and agree to timely pay us, for all such out-of-pocket disbursements, costs, and expenses, which will be itemized separately on our statements.

      We will at all times act on your behalf to the best of our ability.  Any advice concerning the outcome of your legal matters are expressions of our best professional judgment, but are not guarantees.  Such advice is necessarily limited by our knowledge of the facts and is based on the state of the law at the time it is expressed.  You must also understand that while we base our advice on such applicable law, judges and juries can and have rendered inapposite decisions.

      <u>Additional Charges</u>.  At such time as additional legal services are rendered by us on your behalf **<u>outside the scope described</u>**, you will be billed either on an hourly or on a fixed fee basis, the rate or amount of which will depend upon the experience, specialization, and level of professional attainment of the individual performing the service.  Our current hourly rates for attorneys and legal staff are listed on the billing schedule attached to this letter.  This Schedule is periodically reviewed and adjusted to reflect increases in overhead, inflation, and general economic circumstances.

      Asset Transfers to Entities:

            **<u>Real property</u>**:  Documentation prepared in connection with the conveyance of real property to entities recommended (including correspondences and conferences with mortgage lenders to obtain transfer permission for such conveyance) is charged at our hourly rate, plus any regulatory out of pocket fees for recording these legal documents.

**Personal & Confidential**
Calvin Lim, Vice President
Integra Capital Group, Inc.
dba Century Business Solutions
Page 7
February 4, 2016

---

> **LLC's, LP's Corporate Shares:**  Documentation to transfer shares in LLC's,
> LP's and corporate shares to entities recommended (including review of operating
> agreements for permitted transfers is charged at our hourly rate.

> **Assistance with Opening Bank and Brokerage Accounts:**  Assistance with
> opening banking and brokerage accounts for the entities we will form for you will
> be charged at our paralegal's billing rate.

Should your structure include a foreign Asset Protection Trust, our firm charges an
annual fee of $1,500 to act as liaison between you and the foreign trustee, which will cover the
administrative costs of reviewing and responding to overseas correspondences, faxes, and
telephone calls in connection with your foreign Asset Protection Trust. This fee will be payable
upon the first anniversary of the trust registration, and every year thereafter.

Be advised that one or more of your future creditors (should they arise) may challenge
the structure(s) we implement on your behalf.  It is foreseeable that members of our firm may be
involved in this process, either voluntarily or by way of subpoena.  Should that occur, and it is
necessary for any member of our firm to participate in any proceeding following the
implementation of your structure which requires such member to review documents, be a witness
in any deposition or hearing, provide answers to interrogatories, or any such other activity
concerning defending the structure(s) which we implemented as part of your planning, such
member's time shall be compensated at his or her then hourly rate.  Our firm reserves the right to
require an advancement of fees before participating on your behalf.

This letter will acknowledge that we have advised you that there will be annual trustees' fees
and professional fees for the preparation of annual tax compliance for the structures formed by you.
Depending on the structures you form, the IRS and/or U.S. Treasury Department may require
certain forms or returns to be filed.   It is extremely important that you comply with these
requirements and that these forms and returns are filed in a timely manner.  We will inform you of
any required federal compliance requirements by way of a Taxpayer Compliance Memorandum
(when applicable) and expect that you will provide this document to your tax preparer.  If you do
not have a tax preparer or do not believe your tax preparer is capable of properly preparing the
required forms or returns, we will be pleased to provide you with the names of tax preparers whom
we believe will be able to timely and competently complete and file the necessary documents.

3.    **File Retention:**  All original drafted executed documents will be provided to you
for your safekeeping. Jeffrey M. Verdon Law Group. LLP will only retain copies of originals in
your client file.  Your client file will be placed on inactive status after 24 months of inactivity

<u>**Personal & Confidential**</u>
Calvin Lim, Vice President
Integra Capital Group, Inc.
dba Century Business Solutions
Page 8
February 4, 2016

and placed in storage. After our services conclude, Jeffrey M. Verdon Law Group, LLP will, upon your request, deliver your client file in our possession to you. If you do not request your client file, we will retain it for a period of 3 years after your client file is placed on inactive status in storage. If you do not request delivery of the file before the end of the 3-year period, we will have no further obligation to retain the file and may, at our discretion, destroy it without further notice. At any point in time before the 3-year period has elapsed, you may request delivery of the file.

    4.    <u>**E-Mail Communication**</u>:  Unless you inform us otherwise in writing (including by way of E-mail), E-mail is an acceptable means of communicating with you (and we will direct communications to the E-mail address that you have provided). If you wish to encrypt your communications with us for security reasons, you will E-mail this request and we will work with your established encrypted communications. Absent such a request, you agree there is a reasonable expectation of secrecy in our E-mail communications to preserve your confidences as our client.

    5.    <u>**Disputes Between Us**</u>:

    **Fee Disputes.**  While we expect to resolve any disputes with you in a mutually satisfactory manner, should any disputes arise between us that relate only to fees will first be submitted to arbitration under California's Fee Arbitration Act. If that procedure is unsuccessful in resolving our dispute, the fee dispute will be submitted to binding arbitration in the same manner as described in the next paragraph.

    **Professional Negligence (Legal Malpractice and Breach of Fiduciary Duty).**
All non-fee disputes related to our agreement shall be subject to binding arbitration in Orange County, before a retired California Superior Court judge. This includes, but is not limited to, all tort or contract causes of action, claims based on breach of contract, unjust enrichment, legal malpractice, breach of fiduciary duty, constructive fraud, negligent misrepresentation and fraud. C.C.P. Section 1283.05, regarding the manner of taking depositions, is incorporated into the arbitration. Judgment on the arbitrator's award shall be final and may be entered in any competent court. The parties agree to equally share any arbitrator's fees. By agreeing to arbitrate, *you are waiving a trial by judge or jury, and the right to appeal.* The prevailing party at the arbitration shall be entitled to reasonable attorneys' fees, expenses of litigation and/or arbitration, including expert witnesses and costs, related to obtaining and collecting any judgment and/or arbitration award and any other relief to which that party may be entitled. The sole and exclusive venue for the arbitration and/or legal dispute shall be in Orange County, California.

**Personal & Confidential**
Calvin Lim, Vice President
Integra Capital Group, Inc.
dba Century Business Solutions
Page 9
February 4, 2016

───────────────────────────

      Thank you for consulting with us.   We look forward to working with you on this important planning project.

<u>Personal & Confidential</u>
Calvin Lim, Vice President
Integra Capital Group, Inc.
dba Century Business Solutions
Page 10
February 4, 2016

---

## Schedule A – Hourly Billing Rates

| | |
|---|---|
| Jeffrey M. Verdon, Esq. | $795.00 |
| Professor Jerome M. Hesch, Esq. | $750.00 |
| Scott Tansey, Esq. | $595.00 |
| Catherine M. Colombo, Esq. | $525.00 |
| Lindzey M. Schindler, Esq. | $375.00 |
| Lindsay A. Cigler, Esq. | $225.00 |
| Paralegal / Legal Assistant | $195.00 |

EXHIBIT 2



Donald L. Allen
R. Lee Haight
Thomas F. Monaghan
Kenneth J. Gundersen
Robin K. Massingale

**Client Portal Agreement**

This Client Portal Agreement ("Agreement") is made by and between Allen, Haight & Monaghan LLP (the "Firm") and the undersigned ("Client" or "You") effective on the dates it is executed by the Firm's authorized representative upon the following and Conditions:

**1. Purpose:** The Firm owns and provides a Client Portal to permit easy and secure electronic transfer of documents between Client and the Firm and Client access to certain documents created or maintained by the Firm. The Client Portal web-based applications are exclusively provided to the Firm's clients and intended for their sole use.

**2. Use:** By using any features of the Firm's Client Portal, Client consents to the following terms and conditions and acknowledges that the Firm is relying on your consent in allowing you to use the Firm's Client Portal. Your continued use of the Firm's Client Portal after the posting of any amended terms and conditions shall constitute your agreement to be bound by any such changes. The Firm may modify, suspend, discontinue or restrict the use of any portion of the Firm's Client Portal, including the availability of any portion of the content at any time, without notice or liability.

**3. Service Availability:** The Firm will use its best reasonable efforts to provide availability of the Client Portal Service during regular business hours, Monday thru Friday (excluding Holidays). The Firm shall not be responsible for any error, omission, interruption, deletion, defect, delay in operation or transmission, communications line failure, theft or destruction, or unauthorized access to the Client Portal. The Firm is not responsible for any problems or technical malfunctions of any telephone or fiber network or lines, computer online systems, servers or providers, computer equipment, software, failure of any e-mail to be received by the Firm on account of technical problems or traffic congestion on the Internet or any website, or any combination thereof, including any injury or damage to the Client's computer or peripherals related to downloading any materials from the Client Portal.

**4. Security:** Documents are encrypted before being passed over the Internet and while being stored on the Portal, and a username and password are required to access files. In addition, documents added to the Portal are scanned for viruses before being uploaded. All files are maintained behind firewalls to protect against outside intruders. The Firm will use its best efforts to make the Client Portal secure from unauthorized access. However, Client recognizes that no completely secure system for electronic data transfer has yet been devised.

**Client Portal Agreement**
**Page 2 of 4**

**5. Logon Accounts and Their Security.**

a)      The Firm will set up individual logon accounts for those of Client's employees who need access to the Client Portal. Each account will have access only to those document areas requested by Client. (The Firm strongly recommends that Client establish a policy that logon information not be shared with others). In order to maintain security, Client agrees to designate a single individual as the authorized person to contact the Firm to request employee logons. The initial designee is listed below. All initial logon passwords will be transmitted to the designee by email, and passwords will then be changed by you.

b)      You acknowledge that the use of username and password is an adequate form of security. You are solely responsible for (1) authorizing, monitoring, controlling access to and maintaining the strict confidentiality of your username and password; (2) not allowing another person to use your username or password; (3) any charges or damages that may be incurred as a result of your neglect to maintain the strict confidentiality of your username and password; and (4) promptly informing the Firm in writing of any need to deactivate a username due to security concerns or otherwise. The Firm is not liable for any harm related to the misuse or theft of usernames or passwords, disclosure of usernames or passwords, or your authorization to allow another person or entity to access and use the Firm's Client Portal using your username or password. You shall immediately notify the Firm of any unauthorized use of your username or password and any breach of confidentiality. Until the Firm receives this notification from you, you will be held liable for any harm ensuing from the use of your username on the Firm's Client Portal.

**6. Termination of Logon Account:** Client agrees to notify the Firm via email at admin@ahmcpas.com in writing when an individual logon account is to be terminated. The Firm will make every effort to confirm and terminate access within seven business days. However, Client cannot be assured that access has been terminated until Client receives an email confirmation of termination.

**7. Links to Third-Party Sites:** The Client Portal website may contain links to other websites ("Linked Sites"). The Linked Sites are not under the control of the Firm and the Firm is not responsible for the contents of any Linked Site, including without limitation any link contained in a Linked Site, or any changes or updates to Linked Site. The Firm is not responsible for webcasting or any other form of transmission received from any Linked Site. The Firm is providing these links to you only as a convenience, and the inclusion of any link does not imply endorsement by the Firm of the site or any association with its operators.

**8. No Unlawful or Prohibited Use:** As a condition of your use of the Client Portal website, you warrant to the Firm that you or your approved users will not use the Firm's Client Portal website for any purpose that is unlawful or prohibited by these terms, conditions, and notices. You may not use the Firm's Client Portal website in any manner that could damage, disable, overburden, or impair the Firm's website or interfere with any other party's use of the Client Portal Website. You may not obtain or attempt to obtain any materials or information through any means not intentionally made available or provided for through the Client Portal website.

Client Portal Agreement
Page 3 of 4

**9. Firm Disclosure:** The Firm reserves the right at all times to disclose any information as necessary to satisfy any applicable law, regulation, legal process or governmental request, or to edit, refuse to post or to remove any information or materials, in whole or in part, in the Firm's sole discretion.

**10. Client's Responsibility:** You must at your own cost: (a) provide for your own access to the Internet and pay any services fees, telephone charges and online services usage associated with such access, and (b) provide all equipment necessary for you to make such connection to the Client Portal, including a computer and modem.

**11. Dispute Resolution:** The parties agree that any dispute between Client and the Firm relating to this Agreement, or the breach of it, shall, if negotiations and other discussion fail, be first submitted to mediation in accordance with the provision of the Commercial Mediation Rules of the American Arbitration Association ("AAA"). If the parties are unable to resolve the dispute through mediation within 60 days from the date notice is first given from one party to the other as to the existence of such a dispute and the demand to mediate, then they may proceed to resolve the matter by arbitration if this agreement provides that the particular dispute is subject to arbitration, or by whatever other lawful means are available to them if this agreement does not provide for arbitration of the particular dispute. Costs of any mediation proceeding shall be shared equally by all parties.

**12. WARRANTIES:** THE FIRM MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE EFFICACY OF THE SECURITY OF THE CLIENT PORTAL. THE CONTENT AND SERVICES ARE PROVIDED ON AN "AS IS" BASIS AND THE FIRM SPECIFICALLY DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, WARRANTIES OF MERCHANTABILITY OR WARRANTIES AGAINST INFRINGEMENT. THE FIRM, ITS AFFILIATES, EMPLOYEES, AND AGENTS SHALL NOT BE LIABLE FOR ANY DAMAGES OR LOSSES, INCLUDING, WITHOUT LIMITATION, INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES, RESULTING FROM OR CAUSED BY THE PORTAL, ITS CONTENT, OR SECURITY SERVICES PROVIDED HEREIN. THE FIRM DOES NOT WARRANT THAT THE CLIENT PORTAL'S FUNCTIONS WILL BE UNINTERRUPTED OR ERROR-FREE, THAT DEFECTS WILL BE CORRECTED, OR THAT THE FIRM'S CLIENT PORTAL OR THE SERVER THAT MAKES IT AVAILABLE ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

IF YOU ARE DISSATISFIED WITH ANY PORTION OF THE PORTAL, INFORMATION, DOCUMENTS, OR COMMUNICATIONS ON THE PORTAL, OR WITH ANY OF THESE TERMS AND CONDITIONS OF USE, YOUR SOLE AND EXCLUSIVE REMEDY IS TO CEASE USING THE PORTAL AND THE INFORMATION, DOCUMENTS, OR COMMUNICATIONS YOU OBTAINED FROM THE PORTAL.

**Client Portal Agreement**
**Page 4 of 4**

**13. Term and Termination:** This Agreement and the services contemplated by it may be terminated by either the Firm or Client with or without cause and with or without notice at any time. The Firm may at any time terminate in whole or in part the Firm's Client Portal without notice or liability.

**14. Miscellaneous:** This is the entire agreement between the Firm and Client regarding its subject matter. This Agreement does not modify or affect any existing or future engagement letter or agreement between the Firm and Client. The Firm may, in its discretion, alter, add to or delete the Terms and Conditions from time to time without any prior notice. Unless otherwise specified by the Firm, all alterations, additions and deletions shall take effect automatically and be binding on and from the day they are posted on the Portal.

IN WITNESS WHEREOF, the parties as authorized representatives execute this Client Portal Agreement on the dates set forth below.

Very Truly Yours,

*Allen, Haight & Monaghan LLP*

Allen, Haight & Monaghan LLP

| HELEN K. CHU | *Helen K. Chu* | 02-19-16 |
|---|---|---|
| Print Name | Signature | Date |

Authorized person to contact the Firm to request employee logon User IDs:

Name: Susan Zuniga

Title: Controller

Email: accounting@centurybizsolutions.com

Johanna Wilson
General Counsel
johannawilson@centurybizsolutions.com

# EXHIBIT 3

## CHARITABLE LLC/BDIT

### Attorney Engagement Agreement

This Agreement is made as of the 22nd day of December, 2016 by and between **Michael L. Meyer**, Attorney-At-Law ("Attorney") and **Calvin Lim and Helen K. Chu** (referred to as "Client").

### R E C I T A L S

WHEREAS, the Attorney:

(i)     Produces certain documents utilized in the creation of a specialized Limited Liability Company and Beneficiary Defective Irrevocable Trust which is used as a charitable giving vehicle called The Charitable Limited Liability Company/Beneficiary Defective Irrevocable Trust (CLLC/BDIT);

(ii)     Consults with the Client or the Client's Financial Planner ("Planner") on the use of the (CLLC/BDIT) to achieve the Client's charitable and financial goals;

(iii)     Engages a qualified appraiser (the "Appraiser") to provide a valuation report for use by the Client to support the fair market value of the gift of the (CLLC/BDIT) interest to the Charitable Organization, and

(iv)     Produces documents to assign the (CLLC/BDIT) interest to the Charitable Organization; and

WHEREAS, Client desires to engage the Attorney to provide his services and materials to Client; and

NOW, THEREFORE, for good and valuable consideration, the Client and Attorney agree as follows:

1.     The Attorney shall consult with the Client or the Client's Planner to achieve the Client's charitable goals.

2.     The Attorney shall provide to the Client a copy of the Limited Liability Company Agreement and Irrevocable Trust Agreement plus any other related documents; (the Limited Liability Company Agreement/Trust Agreement and other documents collectively referred to as the "Documents") that have been prepared in accordance with the Attorney's direction as set forth in the Information Sheet.  The Documents shall be mailed to the Client or the Client's Planner within a reasonable time after the receipt of this Agreement, the completed Information Sheets, and the Fee described herein.

3.      The Attorney shall revise the Documents as directed by the Client or the Client's planner and consult with Client or Client's planner in regard to all aspects of setup, formation and implementation of the Plan.

4.      The Attorney shall prepare: (I) the Certificate of Limited Liability Company and all documents and filings required in forming a Limited Liability Company and Irrevocable Trust valid under state law; (II) the federal tax identification number; (III) all documents necessary to transfer assets to the (CLLC); filings with the appropriate State or County authorities as necessary and (IV) all documents necessary to facilitate the charitable gift.

5.      The Attorney shall submit a Request for Appraisal and Agreement based on the information given by the Client or the Client's Planner.

6.      The Attorney shall mail to the Client or the Planner a valuation report issued by the Appraiser which supports the fair market value of the (CLLC) Interest being gifted to the Charitable Organization.

7.      The Attorney shall enlist and consult with the Planner in order to properly facilitate the proper setup and administration of the (CLLC/BDIT).  In addition, Planner will facilitate all remaining estate planning necessary to properly implement the (CLLC/BDIT) into Client's overall estate plan.

8.      The Attorney recognizes that all information provided to it concerning the Client constitutes confidential, personal and business information that is proprietary to the Client. The Attorney agrees that, except for information required to be furnished in regard to the provisions herewith, the Attorney shall keep all information confidential and shall not disseminate any such information to any other person or entity without Client's express written consent.

9.      The Attorney agrees that he will not divulge or attempt to divulge any privileged communication between the Attorney and the Client.  The Client understands that if such communications are divulged, they may not be protected from discovery.

10.     The Client recognizes that the Attorney has invested much time, effort and resources into the development of the (CLLC/BDIT) and the information received by Client is proprietary.

11.     Either party may terminate this Agreement at any time by giving written notice. Provided further, in the event the Client elects not to proceed with the implementation of the (CLLC) at any time and for any reason, the Attorney shall be entitled to retain any Fee or portion of a Fee paid as consideration for services previously rendered.  Any notice, request or other communications may be sent to the Attorney at the address listed below.   Any communication sent by telecopy, FAX or e-mail shall be deemed as delivered immediately upon confirmed transmittal.  Any communication sent by mail shall be deemed to be delivered on the third (3rd) business day after deposit into the

United States mail if properly addressed and postage paid.  If the Client pays the fee for setup and implementation of the CLLC as outlined in Paragraph 18 and the Client subsequently receives an audit as outlined in Paragraph 14, Attorney shall represent Client as set forth in Paragraph 14 whether or not either party has terminated this Agreement as set forth in this Paragraph.

12.    This Agreement is governed by and shall be construed in accordance with the laws of the State of Florida.  Any dispute, claim or controversy arising from this Agreement, or between the Attorney and Client shall be resolved exclusively through binding Arbitration.  Arbitration shall take place and decided in the state and county where Attorney resides.  If there is any dispute between the Client and the Attorney that results in a civil complaint filed by either the Attorney or the Client, said dispute shall resolved  exclusively in the County and State where the Attorney resides.

13.    The Documents shall be printed and delivered by the Attorney to the Client.  The Client understands that in preparing the Documents, the Attorney and the Appraiser are utilizing information shown on the Information Sheet and other representations by the Client.

14.    Attorney agrees to represent Client before the Internal Revenue Service ("IRS"), and/or United States Tax Court in relation only to the CLLC and BDIT if the Client's Tax Return(s) are audited by the IRS, and proceeds to IRS Appeals and/or to U.S. Tax Court.

15.    The Attorney has been specifically engaged to provide the materials, services and representation outlined in this engagement agreement alone and the Attorney shall be fully responsible for all obligations herein.  Attorney has not been engaged to provide any advice in connection with the sale of life insurance policies, receives no compensation for the sale of life insurance policies and provides no advice of any kind in relation to finance of life insurance policies.  Client hereby acknowledges reliance on other advisors in connection with sale of life insurance policies and expressly releases Attorney from any claim or cause of action that may result from the application, sale or financing of life insurance policies used in connection with the CLLC/BDIT.

16.    In consideration for the services, materials and representation to be provided by the Attorney, the Client agrees to pay the Attorney the Fee.

The Attorney shall charge to Client the GREATER of: Twenty Five Thousand Dollars ($25,000) OR a fee based on the net total assets transferred to the CLLC (assets less liabilities, if any) calculated upon the date of transfer.  Such transfers include any and all assets transferred to the CLLC to capitalize the CLLC.  This Section applies to ALL transfers made by the Client during the duration of the CLLC.

The fee is calculated as follows:

6% of deductible amount of the assets transferred up to but not in excess of $1,000,000 plus
4% of deductible amount of the assets transferred which exceed $1,000,000.

The calculation of the fee shall be based on transfers of assets during the first year of the CLLC and all transfers that occur in subsequent years.

**\*For purposes of the initial assets transferred for tax year 2016, which consists of five promissory notes totaling USD$2,008,500.00, the total fee assessed will be USD$84,000.00, which will be payable in installments over a six month period from January, 2017 through June, 2017.**

17.     The Client agrees to pay the Attorney an annual administration fee of $2,500 due by March 1st each year, commencing on **March 1, 2018**.  In consideration, the Attorney agrees to provide annual state and federal tax return filings for the CLLC and BDIT annually.


This document is effective as of the date first written above.


**Client**

_____

**Calvin Lim**


_____

**Helen K. Chu**



**Attorney**


_____

**Michael L. Meyer, CPA, MBA, JD, CVA, Attorney-at-law**

# EXHIBIT 4



Donald L. Allen
R. Lee Haight
Thomas F. Monaghan
Robin K. Massingale

July 11, 2017

Sent Via E-Mail: hchu@centurybizsolutions.com
Integra Capital Group, Inc. dba Century Business Solutions
20 Pacifica, Suite 1450
Irvine, CA 92618
Attention: Helen Chu

Dear Helen:

We are confirming our understanding of the terms and objectives of our engagement, the nature and limitations of the services we will provide, and the fee structure relating to our services.

## S CORPORATION INCOME TAX RETURNS

We will prepare the federal, California, Oregon and Tennessee S corporation income tax returns of Integra Capital Group, Inc. dba Century Business Solutions for the year ended December 31, 2016 based upon information submitted to us by the Company and we will process them with an outside computer service. We will also advise you on income tax matters as to which you specifically request our advice. This firm is responsible for preparing only the returns listed above.

It is understood that you will furnish us with all the information required for preparing the returns. We will not audit or verify the data you submit, but we may ask you to clarify certain items.

You have final responsibility for the income tax returns. You are also responsible for management decisions and functions; for designating an individual with suitable skill, knowledge, and experience to oversee the tax services and any other nonattest services we provide; and for evaluating the adequacy and results of those services and accepting responsibility for them. Accordingly, you should review the tax returns carefully prior to signing and filing them.

By your signature below, you are confirming to us that unless we are otherwise advised, the travel, entertainment, gifts, and related expenses are supported by the necessary records required under Section 274 of the Internal Revenue Code. If you have any questions as to the type of records required, please ask us for advice in that regard.

The IRS and U.S. Treasury issued final tangible property regulations (TPRs) that govern when taxpayers must capitalize and when they can deduct expenditures for acquiring, producing or improving tangible property. These regulations were fully effective for tax years beginning on or after January 1, 2014. The final regulations created new annual elections, and while certain safe harbors and elections are implemented through filing statements or treatment of an item on a timely filed federal tax return, the IRS considers the remaining provisions to be a change in

Integra Capital Group, Inc. dba Century Business Solutions
July 11, 2017
Page 2 of 9

accounting method, which may require the filing of Form 3115, Application for Change in Accounting Method.

If we become aware that you may be using an accounting method not in accordance with the final TPR regulations, our firm may need additional time to analyze your current and prior acquisitions and improvements to properly complete Form 3115. By your signature below, you accept ultimate responsibility for your capitalization analyses and decisions, and you agree to provide us with the information necessary to prepare the appropriate elections and/or method change IRS form(s). Please ask us for advice if you have any questions regarding your company's application of these regulations.

You should retain all of the documents, books and records that form the basis of income and deductions. The documents may be necessary to prove the accuracy and completeness of the returns to a taxing authority. Your signature at the end of this letter represents that the Company has maintained the proper supporting documentation.

We will use our professional judgment in preparing your returns. Whenever we are aware that a possibly applicable tax law is unclear or that there may be conflicting interpretations of the law by authorities (e.g. tax agencies and courts), we will explain the possible positions that may be taken on your return.

In accordance with our professional standards, we will follow whatever position you request on your return so long as it is consistent with the codes, regulations, and interpretations that have been promulgated. If you desire a legal opinion before choosing between alternative tax positions, you should retain legal counsel for this purpose. If the Internal Revenue Service should later contest the position taken, there may be an assessment of additional tax plus interest and penalties. We assume no liability for any such additional penalties or assessments. In the event, however, that you ask us to take a tax position that in our professional judgment will not meet the applicable laws and standards as promulgated, we reserve the right to stop work and shall not be liable for any damages that occur as a result of ceasing to render services.

The Company's returns may be reviewed by the taxing authorities. In the event of an audit, you may be requested to produce documents and other evidence to substantiate the income and deductions shown on the returns. Any items resolved against the Company by an examining agent are subject to certain rights of appeal. If the Company is selected for examination by the taxing authorities, we will be available to represent the Company. If you choose to retain us for tax representation services, the terms of engagement relating to those services would be addressed in a separate engagement letter.

The law provides for a penalty to be imposed where taxpayers make a substantial understatement of their tax liability. In the event the IRS determines that a substantial understatement of income tax or an act of negligence in applying the tax law and regulations has occurred, you may be subject to significant fines and penalties.

An understatement of income tax for an S corporation will be considered substantial if it exceeds the greater of 10% of the correct tax required to be shown on the return, or $5,000. The penalty is 20% of the tax underpayment. Taxpayers other than "tax shelters" may seek to avoid all or part of

Integra Capital Group, Inc. dba Century Business Solutions
July 11, 2017
Page 3 of 9

the penalty by showing (1) that they acted in good faith and there was reasonable cause for the understatement, (2) that the understatement was based on substantial authority, or (3) that the relevant facts affecting the item's tax treatment were adequately disclosed on the return. A taxpayer is considered a "tax shelter" if its principal purpose is to avoid federal income tax. Because an S corporation is an entity whose tax attributes flow through to its shareholders, the penalty for substantial understatement of tax relating to S corporation items may be imposed on the shareholder. You agree to advise us if you wish disclosure to be made in your returns or if you desire us to identify or perform further research with respect to any material tax issues for the purposes of ascertaining whether, in our opinion, there is "substantial authority" for the position proposed to be taken on such issues in your returns.

Our work in connection with preparation of the S Corporation's income tax returns does not include any procedures designed to discover fraud, defalcations, or other irregularities should any exist. We will render such accounting and bookkeeping assistance as we find necessary for preparing the S Corporation's income tax returns.

Management is responsible for the design, implementation and administration of applicable policies that may be required under the Affordable Care Act. Our firm is not rendering any legal services as part of our engagement, and we will not be responsible for advising you with respect to the legal and regulatory aspects of your compliance with the requirements of the Affordable Care Act.

**The fee for preparation of the 2016 federal, California, Oregon and Tennessee S corporation income tax returns is $9,500. There will be no separate charges for accounting services or foreign currency conversion. Rather, any accounting services or foreign currency conversion services that is required in conjunction with preparation of the income tax returns will be completed by company personnel. Our fee quote of $9,500 also includes updating the federal and California shareholder stock basis of S corporation stock owned by Calvin Lim and Helen Chu.**

**Additional state income tax returns may be required due to qualification for doing business in a new state or actually doing business in a new state. In that event, a fee of $300 per state tax return would be charged for income tax returns required to be filed in that state.**

## FOREIGN REPORTING

**Please note that any person or entity subject to the jurisdiction of the United States (includes individuals, corporations, partnerships, trusts, and estates) having a financial interest in, or signature or other authority over, bank accounts, securities, or other financial accounts in a foreign country having an aggregate value exceeding $10,000 at any time during the calendar year, shall report such a relationship. Although there are some limited exceptions, filing requirements also apply to taxpayers that have direct or indirect control over a foreign or domestic entity with foreign financial accounts, even if the taxpayer does not have foreign account(s). For example, a corporate-owned foreign account would require filings by the corporation *and* by the individual corporate officers with signature authority. Failure to disclose the required information to the U.S. Department of the Treasury may result in substantial civil and/or criminal penalties.**

Integra Capital Group, Inc. dba Century Business Solutions
July 11, 2017
Page 4 of 9

If you and/or your entity have a financial interest in, or signature authority over, any foreign accounts, you are responsible for providing our firm with all the information necessary to prepare the Report of Foreign Bank and Financial Accounts (FBAR) required by the U.S. Department of the Treasury in order for the FBAR to be received by the Department on or before the due date. In 2015, a new law was passed that, among other tax deadline changes, also impacted the FBAR due date for the 2016 FBARs required to be filed in 2017. As such, beginning with the 2017 tax filing season, if you have an FBAR filing requirement, the new FBAR filing deadline is April 15th. The FBAR deadline now follows the Federal income tax due date guidance, which notes that if the tax due date falls on a weekend or legal holiday, a return is considered timely filed if filed on the next succeeding date. An automatic 6-month extension will be granted to October 15th of each tax year.

Electronic filing of FBAR reports is mandatory using the Bank Secrecy Act (BSA) e-filing system located on the Financial Crimes Enforcement Network (FinCEN). If you would like our firm to submit your electronic FBAR report (FinCEN Form 114) on your behalf, we must receive a signed consent form (FinCEN Form 114a) from you prior to submitting the foreign reporting form. If you do not provide our firm with information regarding any interest you may have in a foreign account, or if we do not timely receive your signed authorization to file your foreign reporting form, we will not be able to prepare and file any of the required disclosure statements.

In addition, the Internal Revenue Service also requires information reporting under applicable Internal Revenue Code sections and related regulations, and the respective IRS tax forms are due when your income tax return is due, including extensions. The IRS reporting requirements are in addition to the U.S. Department of the Treasury reporting requirements stated above. Therefore, if you fall into one of the below categories, or if you have any direct or indirect foreign interests, you may be required to file the following applicable IRS forms.
- Form 8938 –     Individuals or entities with ownership of foreign financial assets and that meet specified criteria;
- Form 5471 – Officers, directors, or shareholders with respect to certain foreign corporations;
- Form 5472 – Foreign-owned U.S. corporations or foreign corporations engaged in U.S. trade or businesses;
- Form 926 – U.S. transferors of property to foreign corporations;
- Forms 3520 or 3520-A – U.S. persons with interests in foreign trusts; or
- Form 8865 – U.S. persons with interests in foreign partnerships.

Failure to timely file the appropriate forms with the U.S. Department of the Treasury and the Internal Revenue Service may result in substantial monetary penalties. By your signature below, you accept responsibility for informing us if you believe that you may have foreign reporting requirements with the U.S. Department of the Treasury and/or Internal Revenue Service and you agree to timely provide us with the information necessary to prepare the appropriate form(s). We assume no liability for penalties associated with the failure or untimely filing of any of these forms.

Integra Capital Group, Inc. dba Century Business Solutions
July 11, 2017
Page 5 of 9

**Since there is an outside accountant engaged to specifically address the Canadian tax issues, AH&M is not proposing on such services. If it is necessary for AH&M to become involved with respect to these issues, such services will be billed on an hourly basis at our standard hourly billing rates.**

## TAX PLANNING AND OTHER TAX SERVICES

Based upon information provided to us by the Company, we will provide suggestions and recommendations to minimize the Company's income tax burden. These suggestions and recommendations fall under the category of income tax planning services.

In addition to general income tax planning services, we can also advise the Company regarding questions or issues for which you specifically request our advice. This advice would include tax research, special tax projects and correspondence with taxing authorities.

Our policy is to put all tax research and planning advice in writing. Therefore, you should not rely on any unwritten advice because it may be tentative and not yet fully reviewed. These additional services are not included in our fee for preparation of the S corporation income tax returns. Fees for corporate tax planning and other tax services will be billed at our hourly billing rates. Whenever possible, we will provide you with fee estimates for tax planning and other tax services.

**AH&M will engage in 2017 year-end corporate and individual income tax planning for Century Business Solutions and Calvin Lim and Helen Chu. Such planning would include preparation of corporate and individual income tax projections based upon financial data to be provided to AH&M by company personnel and the development of tax reduction strategies to reduce the individual income tax liability of Calvin Lim and Helen Chu. Such services falls under the category of general income tax planning and a fee of $8,000 will be billed for this combined corporate and individual income tax planning.**

**If specific tax planning is desired by the client to investigate options for reducing taxable income and the related income tax liability, such as what occurred during 2016 year-end tax planning when planning with the charitable LLC was implemented, AH&M will bill for specific income tax planning that is approved by the client on an hourly basis at our standard hourly billing rates with respect to such planning.**

## MEETINGS AND CORRESPONDENCE

Meetings, including preparation related to meetings, and correspondence will be billed at our hourly billing rates.

## IRC §7525 CONFIDENTIAL CLIENT COMMUNICATION PRIVILEGE

Federal law has extended the attorney-client privilege to some, but not all, communications between a client and the client's CPA. The privilege applies only to noncriminal tax matters that are before the IRS or brought by or against the U.S. government in a federal court. The

Integra Capital Group, Inc. dba Century Business Solutions
July 11, 2017
Page 6 of 9

communications must be made in connection with tax advice. Communications solely concerning the preparation of a tax return will not be privileged.

In addition, the confidentiality privilege can be inadvertently waived if the contents of any privileged communication are discussed with a third party, such as a lending institution, a friend, or a business associate. We recommend that you contact us before releasing any privileged information to a third party. As a corporation, you need to be especially careful about privileged communications.

If a communication is made in the presence of a corporate employee who is not authorized to act or speak for the corporation in relation to the communication's subject matter, then the communication will be deemed to be made in the presence of a third party and any privilege will be waived. If we are asked to disclose any privileged communication, unless we are required to disclose the communication by law, we will not provide such disclosure until you have had an opportunity to argue that the communication is privileged. You agree to pay any and all reasonable expenses that we incur, including legal fees, that are a result of attempts to protect any communication as privileged.

In connection with this engagement, we may communicate with you or others via email transmission. We take reasonable measures to secure your confidential information in our email transmissions, including password protecting tax returns and other confidential documents. However, as emails can be intercepted and read, disclosed, or otherwise used or communicated by an unintended third party, or may not be delivered to each of the parties to whom they are directed and only to such parties, we cannot guarantee or warrant that emails from us will be properly delivered and read only by the addressee.

Therefore, we specifically disclaim and waive any liability or responsibility whatsoever for interception or unintentional disclosure or communication of email transmissions, or for the unauthorized use or failed delivery of emails transmitted by us in connection with the performance of this engagement. In that regard, you agree that we shall have no liability for any loss or damage to any person or entity resulting from the use of email transmissions, including any consequential, incidental, direct, indirect, or special damages, such as loss of sales or anticipated profits, or disclosure or communication of confidential or proprietary information. Unless you indicate otherwise, by signing this letter, you consent that our Firm may transmit confidential information that you provided us to third parties in order to facilitate delivering our services to you. Please feel free to inquire if you would like additional information regarding the transmission of confidential information to entities outside the firm.

## RECORD RETENTION

It is our policy to keep records related to this engagement for seven years. However, Allen, Haight & Monaghan LLP does not keep any original client records, so we will return those to you at the completion of the services rendered under this engagement. When records are returned to you, it is your responsibility to retain and protect your records for possible future use, including potential examination by any government or regulatory agencies.

Integra Capital Group, Inc. dba Century Business Solutions
July 11, 2017
Page 7 of 9

By your signature below, you acknowledge and agree that upon the expiration of the seven year period, Allen, Haight & Monaghan, LLP shall be free to destroy our records related to this engagement.

## FEE STRUCTURE

Our fees take into consideration the complexity of the issues encountered on the engagement, the quality and timeliness of information provided to our firm, and other factors as described more fully below.  Our charges will include out-of-pocket expenses, for which we will make semi-monthly billings.

The total fees billed for preparation of the tax returns includes a base fee for preparation of the returns based upon the information initially submitted to our firm by the client. The total fees billed for preparation of the tax returns also includes applicable additional fees incurred for accounting services rendered in connection with preparation of the tax returns, correspondence by firm personnel with the client and third parties to obtain information that was not initially provided to our firm by the client, multiple revisions made to the tax returns for additional information provided by the client or third parties or for changes requested by the client, research of tax issues impacting preparation of the tax returns, completion of the tax returns within 30 days of the extended due date of the tax returns for any reason other than delays caused by the receipt of information from third parties (e.g. Schedule K-1 forms) that is outside the control of the client, and any other factors that would cause our firm to incur additional time.

Our tax preparation fee does not include responding to federal and state taxing authority inquiries and the client understands that the tax preparer is not responsible for federal or state taxing authority disallowance of doubtful deductions or deductions unsupported by adequate documentation nor for resulting tax penalties and interest.

We reserve the right to cease services until past due accounts are paid. We will advise you in advance of our intention to cease services in this regard. If we must cease services, we may require a retainer before we resume services.

You may terminate your engagement of our services at any time. If you decide to terminate our engagement, you will remain liable for any unpaid fees. We reserve the right to withdraw from this engagement at any time because of unpaid fees, professional standards, or other reasons.

We will advise you in advance of our decision to withdraw, and we will assist in the orderly transfer of services to a new accounting firm as long as the requests made of us are reasonable.

If any dispute arises among the parties hereto, the parties agree to first try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Rules for Professional Accounting and Related Services Disputes before resorting to litigation. The costs of any mediation proceeding shall be shared equally by all parties.

The liability of Allen, Haight & Monaghan LLP (including its partners, employees and agents) to Integra Capital Group, Inc. dba Century Business Solutions for any claim or damages arising out of, connected with, or resulting from Allen, Haight & Monaghan LLP's services, work product or

Integra Capital Group, Inc. dba Century Business Solutions
July 11, 2017
Page 8 of 9

the engagement generally, shall not exceed all fees related to the engagement paid by Integra Capital Group, Inc. dba Century Business Solutions to Allen, Haight & Monaghan LLP.

Client and accountant both agree that any dispute over fees charged by the accountant to the client will be submitted for resolution by arbitration in accordance with the Rules for Professional Accounting and Related Services Disputes of the American Arbitration Association.   Such arbitration shall be binding and final.   IN AGREEING TO ARBITRATION, WE BOTH ACKNOWLEDGE THAT IN THE EVENT OF A DISPUTE OVER FEES CHARGED BY THE ACCOUNTANT, EACH OF US IS GIVING UP THE RIGHT TO HAVE THE DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE OR JURY AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION FOR RESOLUTION. The prevailing party shall be entitled to an award of reasonable attorneys' fees and costs incurred in connection with the arbitration of the dispute in an amount to be determined by the arbitrator.

## CONCLUSION

We will be pleased to discuss this letter with you at your convenience.   If the foregoing is acceptable to you, please sign the original copy of this letter in the space provided and return it to us via e-mail at admin@ahmcpas.com or fax (949) 852-9620.

**Please note that you are affirming to Allen, Haight & Monaghan LLP your understanding of, and agreement to, the terms and conditions of this engagement letter by any one of the following actions: returning your signed engagement letter to our firm, submitting your income tax information to us for use in the preparation of your returns, filing the tax returns we have prepared for you with the taxing authorities, or the payment of our tax return preparation fees.**

Respectfully submitted,

Allen Haight & Monaghan LLP

Allen, Haight & Monaghan LLP

Integra Capital Group, Inc. dba Century Business Solutions
July 11, 2017
Page 9 of 9

## ACKNOWLEDGEMENT

The services described in the foregoing S corporation income tax returns engagement letter are in accordance with our requirements and are acceptable to us.

_Helen K. Chu_

Helen Chu
Integra Capital Group, Inc. dba Century Business Solutions

_7/20/17_

Date

Current Email Address:  _accounting@centurybizsolutions.com_

## DELIVERY METHOD

Please note that our standard method of delivery of all client copies of tax returns will be through our secure on-line portal. Since our secure on-line portal is connected to an email address, it is very important that you provide us with a current email address below for the purpose of delivery of the tax returns.

Please indicate your preferred method of delivery:

[X] *Portal          [ ] CD          [ ] Paper

*Email address (if different from above): _____

# EXHIBIT 5



Donald L. Allen
R. Lee Haight
Thomas F. Monaghan
Robin K. Massingale

July 11, 2017

Sent Via E-Mail: hchu@centurybizsolutions.com
Calvin Lim & Helen Chu
3298 Poppy Hills Lane
Encinitas, CA 92024

Dear Calvin & Helen:

We are confirming our understanding of the terms and objectives of our engagement, the nature and limitations of the services we will provide, and the fee structure relating to our services.

## INDIVIDUAL INCOME TAX RETURNS

We will prepare your 2016 federal and California individual income tax returns based upon information submitted to us by you and we will process them with an outside computer service. We will also advise you on income tax matters as to which you specifically request our advice. This firm is responsible for preparing only the returns listed above.

It is understood that you will furnish us with all the information required for preparing the returns. We will not audit or otherwise verify the data you submit, but we may ask you to clarify certain items.

We must receive all of the information that is necessary for preparation of your returns by March 15, 2017 to ensure that your returns will be completed by April 18, 2017. If we have not received all of your information by March 15, 2017, your returns will be placed on extension. However, please note that if you do not provide us with sufficient information to calculate an accurate estimate of the tax liabilities reported on your tax return extensions, you may be subject to late filing and/or late payment penalties for which our firm assumes no responsibility or liability.

You have final responsibility for the income tax returns. Accordingly, you should review the tax returns carefully prior to signing and filing them.

By your signature below, you are confirming to us that unless we are otherwise advised, the travel, entertainment, gifts, and related expenses (if applicable) are supported by the necessary records required under Section 274 of the Internal Revenue Code. If you have any questions as to the type of records required, please ask us for advice in that regard.

If your individual return also includes business activities, please note that the IRS and U.S. Treasury issued final tangible property regulations (TPRs) that govern when taxpayers must capitalize and when they can deduct expenditures for acquiring, producing or improving tangible property. These regulations were fully effective for tax years beginning on or after January 1,

Calvin Lim & Helen Chu
July 11, 2017
Page 2 of 8

2014.  The final regulations created new annual elections, and while certain safe harbors and elections are implemented through filing statements or treatment of an item on a timely filed federal tax return, the IRS considers the remaining provisions to be a change in accounting method, which may require the filing of Form 3115, Application for Change in Accounting Method.

If we become aware that you may be using an accounting method not in accordance with the final TPR regulations, our firm may need additional time to analyze your current and prior acquisitions and improvements to properly complete Form 3115.  By your signature below, you accept ultimate responsibility for your capitalization analyses and decisions, and you agree to provide us with the information necessary to prepare the appropriate elections and/or method change IRS form(s).  Please ask us for advice if you have any questions regarding the application of these regulations to your business activities

You should retain all of the documents, books and records that form the basis of income and deductions.  The documents may be necessary to prove the accuracy and completeness of the returns to a taxing authority.  Your signature at the end of this letter represents that you have maintained the proper supporting documentation.

We will use our professional judgment in preparing your returns.  Whenever we are aware that a possibly applicable tax law is unclear or that there may be conflicting interpretations of the law by authorities (e.g. tax agencies and courts), we will explain the possible positions that may be taken on your return.

In accordance with our professional standards, we will follow whatever position you request on your return so long as it is consistent with the codes, regulations, and interpretations that have been promulgated.  If you desire a legal opinion before choosing between alternative tax positions, you should retain legal counsel for this purpose.  If the Internal Revenue Service should later contest the position taken, there may be an assessment of additional tax plus interest and penalties.  We assume no liability for any such additional penalties or assessments.  In the event, however, that you ask us to take a tax position that in our professional judgement will not meet the applicable laws and standards as promulgated, we reserve the right to stop work and shall not be liable for any damages that occur as a result of a ceasing to render services.

These returns may be reviewed by the taxing authorities.  In the event of an audit, you may be required to produce documents and other evidence to substantiate the income, deductions and other information reported on the returns. Any items resolved against you by the taxing authorities are subject to certain rights of appeal.  If you are selected for examination by the taxing authorities, we will be available to represent you.  These additional services are not included in our fee for preparation of the individual income tax returns.  If you choose to retain us for tax representation services, the terms of engagement relating to those services would be addressed in a separate engagement letter.

The law provides for a penalty to be imposed where taxpayers make a substantial understatement of their tax liability.  In the event the IRS determines that a substantial understatement of income tax or an act of negligence in applying the tax law and regulations has occurred, you may be subject to significant fines and penalties.

Calvin Lim & Helen Chu
July 11, 2017
Page 3 of 8

An understatement of income tax for an individual will be considered substantial if it exceeds the greater of 10% of the correct tax required to be shown on the return, or $5,000. The penalty is 20% of the tax underpayment. Taxpayers may seek to avoid all or part of the penalty by showing (1) that they acted in good faith and there was reasonable cause for the understatement, (2) that the understatement was based on substantial authority, or (3) that the relevant facts affecting the item's tax treatment were adequately disclosed on the return. You agree to advise us if you wish disclosure to be made in your returns or if you desire us to identify or perform further research with respect to any material tax issues for the purposes of ascertaining whether, in our opinion, there is "substantial authority" for the position proposed to be taken on such issues in your returns.

Our work in connection with preparation of the individual income tax returns does not include any procedures designed to discover fraud, defalcation, or other irregularities should any exist. We will render such accounting and bookkeeping assistance as we find necessary for preparing the income tax returns.

The Affordable Care Act (ACA) added various new health insurance mandates, penalties, and credits beginning in 2014. Our services in connection with this engagement are not designed to address the legal or regulatory aspects of your compliance with the Affordable Care Act. In preparing your individual tax returns, we will rely solely on the information you provide us regarding the ACA mandates and you agree to accept full responsibility for the accuracy and completeness of this information, as well as your compliance with the ACA. As such, we will not be responsible for any taxes, penalties, or interest that may be assessed.

**AH&M will prepare the 2016 federal and California individual income tax returns of Calvin Lim and Helen Chu. Preparation of these income tax returns includes preparation of IRS Form 1040 and all related schedules, preparation of California Form 540 and all related schedules, preparation of IRS Form 5471 Information Return of U.S. Persons With Respect To Certain Foreign Corporations to report the indirect ownership by Calvin and Helen of the stock of Century Business Solutions Canada ULC, and preparation of FinCEN Form 114 Report of Foreign Bank And Financial Accounts to report Canadian bank accounts in the name of Century Business Solutions. The fee for preparation of these returns will be $3,500.**

**FOREIGN REPORTING**

**Please note that any person or entity subject to the jurisdiction of the United States (includes individuals, corporations, partnerships, trusts, and estates) having a financial interest in, or signature or other authority over, bank accounts, securities, or other financial accounts in a foreign country having an aggregate value exceeding $10,000 at any time during the calendar year, shall report such a relationship. Although there are some limited exceptions, filing requirements also apply to taxpayers that have direct or indirect control over a foreign or domestic entity with foreign financial accounts, even if the taxpayer does not have foreign account(s). For example, a corporate-owned foreign account would require filings by the corporation *and* by the individual corporate officers with signature authority. Failure to disclose the required information to the U.S. Department of the Treasury may result in substantial civil and/or criminal penalties.**

Calvin Lim & Helen Chu
July 11, 2017
Page 4 of 8

If you and/or your entity have a financial interest in, or signature authority over, any foreign accounts, you are responsible for providing our firm with all the information necessary to prepare the Report of Foreign Bank and Financial Accounts (FBAR) required by the U.S. Department of the Treasury in order for the FBAR to be received by the Department on or before the due date. In 2015, a new law was passed that, among other tax deadline changes, also impacted the FBAR due date for the 2016 FBAR's required to be filed in 2017. As such, beginning with the 2017 tax filing season, if you have an FBAR filing requirement, the new FBAR filing deadline is April 15th. The FBAR deadline now follows the Federal income tax due date guidance, which notes that if the tax due date falls on a weekend or legal holiday, a return is considered timely filed if filed on the next succeeding date. An automatic 6-month extension will be granted to October 15th of each tax year.

Electronic filing of FBAR reports is mandatory using the Bank Secrecy Act (BSA) e-filing system located on the Financial Crimes Enforcement Network (FinCEN). If you would like our firm to submit your electronic FBAR report (FinCEN Form 114) on your behalf, we must receive a signed consent form (FinCEN Form 114a) from you prior to submitting the foreign reporting form. If you do not provide our firm with information regarding any interest you may have in a foreign account, or if we do not timely receive your signed authorization to file your foreign reporting form, we will not be able to prepare and file any of the required disclosure statements.

In addition, the Internal Revenue Service also requires information reporting under applicable Internal Revenue Code sections and related regulations, and the respective IRS tax forms are due when your income tax return is due, including extensions. The IRS reporting requirements are in addition to the U.S. Department of the Treasury reporting requirements stated above. Therefore, if you fall into one of the below categories, or if you have any direct or indirect foreign interests, you may be required to file the following applicable IRS forms.
•     Form 8938 –     Individuals or entities with ownership of foreign financial assets and that meet specified criteria;
•     Form 5471 – Officers, directors, or shareholders with respect to certain foreign corporations;
•     Form 5472 – Foreign-owned U.S. corporations or foreign corporations engaged in U.S. trade or businesses;
•     Form 926 – U.S. transferors of property to foreign corporations;
•     Forms 3520 or 3520-A – U.S. persons with interests in foreign trusts; or
•     Form 8865 – U.S. persons with interests in foreign partnerships.

Failure to timely file the appropriate forms with the U.S. Department of the Treasury and the Internal Revenue Service may result in substantial monetary penalties. By your signature below, you accept responsibility for informing us if you believe that you may have foreign reporting requirements with the U.S. Department of the Treasury and/or Internal Revenue Service and you agree to timely provide us with the information necessary to prepare the appropriate form(s). We assume no liability for penalties associated with the failure or untimely filing of any of these forms.

Calvin Lim & Helen Chu
July 11, 2017
Page 5 of 8

## TAX PLANNING AND OTHER TAX SERVICES

Based upon information provided to us by you with respect to your individual tax situation, we will provide suggestions and recommendations to minimize your individual income tax liabilities. These suggestions and recommendations fall under the category of income tax planning services.

In addition to general income tax planning services, we can also advise you regarding questions or issues for which you specifically request our advice. This advice would include tax research, special tax projects and correspondence with taxing authorities.
Our policy is to put all tax research and planning advice in writing. Therefore, you should not rely on any unwritten advice because it may be tentative and not yet fully reviewed. These additional services are not included in our fee for preparation of the individual income tax returns. Fees for individual income tax planning and other tax services will be billed at our hourly billing rates. Whenever possible, we will provide you with fee estimates for tax planning and other tax services.

## MEETINGS AND CORRESPONDENCE

Meetings, including preparation related to meetings, and correspondence will be billed at our hourly billing rates.

## IRC §7525 CONFIDENTIAL CLIENT COMMUNICATION PRIVILEGE

Federal law has extended the attorney-client privilege to some, but not all, communications between a client and the client's CPA. The privilege applies only to noncriminal tax matters that are before the IRS or brought by or against the U.S. government in a federal court. The communications must be made in connection with tax advice. Communications solely concerning the preparation of a tax return will not be privileged.

In addition, the confidentiality privilege can be inadvertently waived if the contents of any privileged communication are discussed with a third party, such as a lending institution, a friend, or a business associate. We recommend that you contact us before releasing any privileged information to a third party.

If we are asked to disclose any privileged communication, unless we are required to disclose the communication by law, we will not provide such disclosure until you have had an opportunity to argue that the communication is privileged. You agree to pay any and all reasonable expenses that we incur, including legal fees, that are a result of attempts to protect any communication as privileged.

In connection with this engagement, we may communicate with you or others via email transmission. We take reasonable measures to secure your confidential information in our email transmissions, including password protecting tax returns and other confidential documents. However, as emails can be intercepted and read, disclosed, or otherwise used or communicated by an unintended third party, or may not be delivered to each of the parties to whom they are directed and only to such parties, we cannot guarantee or warrant that emails from us will be properly delivered and read only by the addressee. Therefore, we specifically disclaim and waive any

Calvin Lim & Helen Chu
July 11, 2017
Page 6 of 8

liability or responsibility whatsoever for interception or unintentional disclosure or communication of email transmissions, or for the unauthorized use or failed delivery of emails transmitted by us in connection with the performance of this engagement. In that regard, you agree that we shall have no liability for any loss or damage to any person or entity resulting from the use of email transmissions, including any consequential, incidental, direct, indirect, or special damages, such as loss of sales or anticipated profits, or disclosure or communication of confidential or proprietary information.

## RECORD RETENTION

It is our policy to keep records related to this engagement for seven years.  However, Allen, Haight & Monaghan LLP does not keep any original client records, so we will return those to you at the completion of the services rendered under this engagement.  When records are returned to you, it is your responsibility to retain and protect your records for possible future use, including potential examination by any government or regulatory agencies.

By your signature below, you acknowledge and agree that upon the expiration of the seven year period, Allen, Haight & Monaghan, LLP shall be free to destroy our records related to this engagement.

## FEE STRUCTURE

Our fees take into consideration the complexity of the issues encountered on the engagement, the quality and timeliness of information provided to our firm, and other factors as described more fully below.  Our charges will include out-of-pocket expenses, for which we will make semi-monthly billings.

The total fees billed for preparation of the tax returns includes a base fee for preparation of the returns based upon the information initially submitted to our firm by the client. The total fees billed for preparation of the tax returns also includes applicable additional fees incurred for accounting services rendered in connection with preparation of the tax returns, correspondence by firm personnel with the client and third parties to obtain information that was not initially provided to our firm by the client, multiple revisions made to the tax returns for additional information provided by the client or third parties or for changes requested by the client, research of tax issues impacting preparation of the tax returns, completion of the tax returns within 30 days of the extended due date of the tax returns for any reason other than delays caused by the receipt of information from third parties (e.g. Schedule K-1 forms) that is outside the control of the client, and any other factors that would cause our firm to incur additional time.

Our tax preparation fee does not include responding to federal and state taxing authority inquiries and the client understands that the tax preparer is not responsible for federal or state taxing authority disallowance of doubtful deductions or deductions unsupported by adequate documentation nor for resulting tax penalties and interest.

We reserve the right to cease services until past due accounts are paid.  We will advise you in advance of our intention to cease services in this regard.  If we must cease services, we may require a retainer before we resume services.

Calvin Lim & Helen Chu
July 11, 2017
Page 7 of 8

You may terminate your engagement of our services at any time.  If you decide to terminate our engagement, you will remain liable for any unpaid fees.  We reserve the right to withdraw from this engagement at any time because of unpaid fees, professional standards, or other reasons.  We will advise you in advance of our decision to withdraw, and we will assist in the orderly transfer of services to a new accounting firm as long as the requests made of us are reasonable.

If any dispute arises among the parties hereto, the parties agree to first try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Rules for Professional Accounting and Related Services Disputes before resorting to litigation. The costs of any mediation proceeding shall be shared equally by all parties.

The liability of Allen, Haight & Monaghan LLP (including its partners, employees and agents) to Calvin Lim & Helen Chu for any claim or damages arising out of, connected with, or resulting from Allen, Haight & Monaghan LLP's services, work product or the engagement generally, shall not exceed all fees related to the engagement paid by Calvin Lim & Helen Chu to Allen, Haight & Monaghan LLP.

Client and accountant both agree that any dispute over fees charged by the accountant to the client will be submitted for resolution by arbitration in accordance with the Rules for Professional Accounting and Related Services Disputes of the American Arbitration Association.  Such arbitration shall be binding and final.  IN AGREEING TO ARBITRATION, WE BOTH ACKNOWLEDGE THAT IN THE EVENT OF A DISPUTE OVER FEES CHARGED BY THE ACCOUNTANT, EACH OF US IS GIVING UP THE RIGHT TO HAVE THE DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE OR JURY AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION FOR RESOLUTION. The prevailing party shall be entitled to an award of reasonable attorneys' fees and costs incurred in connection with the arbitration of the dispute in an amount to be determined by the arbitrator.

## CONCLUSION

We will be pleased to discuss this letter with you at your convenience.  If the foregoing is acceptable to you, please sign the original copy of this letter in the space provided and return it to us via e-mail at admin@ahmcpas.com or fax (949) 852-9620.

**Please note that you are affirming to Allen, Haight & Monaghan LLP your understanding of, and agreement to, the terms and conditions of this engagement letter by any one of the following actions: returning your signed engagement letter to our firm, submitting your income tax information to us for use in the preparation of your returns, filing the tax returns we have prepared for you with the taxing authorities, or the payment of our tax return preparation fees.**

Respectfully submitted,

*Allen Haight & Monaghan LLP*

Allen, Haight & Monaghan LLP

Calvin Lim & Helen Chu
July 11, 2017
Page 8 of 8

## ACKNOWLEDGEMENT

The services described in the foregoing engagement letter are in accordance with my/our requirements and are acceptable to me/us. My/our signature(s) below also represents my/our authorization for Allen, Haight & Monaghan LLP to access my/our tax account information via the California Franchise Tax Board online website in order to view tax payments posted to my/our account that will be claimed on my/our 2016 California individual income tax return.

_____

Calvin Lim & Helen Chu

_____7/20/17_____

Date

Current Email Address: _hchu@centurybizsolutions.com_____

## DELIVERY METHOD

Please note that our standard method of delivery of all client copies of tax returns will be through our secure on-line portal. Since our secure on-line portal is connected to an email address, it is very important that you provide us with a current email address below for the purpose of delivery of the tax returns.

Please indicate your preferred method of delivery:

[X] *Portal          [ ] CD          [ ] Paper

*Email address (if different from above): _____